# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| MICHLLE RICHARD, individually, as Wife and Heir-at-Law, and as Special Administrator of the Estate of Stacy Richard, |  |
| *Plaintiff,* |  |
| vs. | Case No. 15-1279-EFM-KGG |
| CITY OF WICHITA, KANSAS; CITY OF WICHITA POLICE DEPARTMENT; BRUCE MACKEY; MATTHEW PHILLIPS; WILLIAM STEVENS; BRIAN ARTERBURN; and MICHAEL K. O'BRIEN, |  |
| *Defendants.* |  |

## MEMORANDUM AND ORDER

In February 2014, Plaintiff Michlle Richard reported that her husband, Stacy, was suicidal in their home with a gun to his head. Officers from the Wichita Police Department ("WPD") responded and quickly entered the home. Ultimately, Stacy ignored the officers' demands and allegedly pointed his weapon at them. The officers shot Stacy 16 times, but he survived. However, several months later he committed suicide. Plaintiff now brings this action as Stacy's widow and special administrator of his estate. She is suing the City of Wichita ("the City"), the WPD, and WPD officers Bruce Mackey, Matthew Phillips, William Stevens, Brian Arterburn, and Michael K. O'Brien (collectively "the officers"). Plaintiff brings claims under

42 U.S.C. § 1983 for excessive force, failure to train, and a pattern and practice of excessive force. She also brings various state law claims. The City, WPD, and officers Phillips, Stevens, and Arterburn now move under Rule 12(b)(6) to dismiss each count in Plaintiff's complaint (Doc. 25). Officer Mackey also moves for judgment on the pleadings on counts 1, 3, 4, 5, and 7 (Doc. 30).[1] For the reasons stated below, the Court grants in part and denies in part the Defendants' motions.

## I.      Factual and Procedural Background

### A.  Facts Considered

Normally when considering a Rule 12(b)(6) motion, the Court will not look beyond the facts alleged in the complaint.[2] Typically, the Court must convert a 12(b)(6) motion into a motion for summary judgment to consider matters outside of the complaint.[3] But there is an exception to this norm. Sometimes, the Court can consider additional evidence submitted by the defendant when deciding a 12(b)(6) motion. If the plaintiff refers to a document in his complaint, but fails to incorporate it by reference or attach it to the complaint, the Court may consider an indisputably authentic copy of that document submitted by the defendant in a motion to dismiss.[4] Even when the Court can consider outside evidence on a motion to dismiss, it is not

---

[1] Officer Mackey advances identical arguments to those advanced in the motion to dismiss. For the sake of clarity, the Court will not distinguish between the two motions, or their respective Defendants, throughout the Order.

[2] *MacArthur v. San Juan Cty.*, 309 F.3d 1216, 1221 (10th Cir. 2002) (citing *Dean Witter Reyonlds, Inc. v. Howsam*, 261 F.3d 956, 960 (10th Cir. 2001)).

[3] *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998).

[4] *Id.*

required to do so.[5]   Rather, the Court may exercise its discretion and decline to consider Defendants' attached exhibits.[6]

Defendants argue that the Court should consider their additional evidence.  They note that Plaintiff's complaint quotes or refers to information contained in dispatch logs and information contained in the video of the incident.[7]   But Plaintiff did not attach or incorporate any of those materials in her complaint.  Defendants have attached these materials, and argue that the Court can properly consider them in deciding their 12(b)(6) motion.  Plaintiff, on the other hand, argues that the Court should exclude Defendants' additional evidence because she disputes the authenticity of the materials.

The Court has reviewed the disputed evidence and finds that the materials only impact a portion of Plaintiff's claims and Defendants' arguments for dismissal.[8]   The additional evidence does not contradict those allegations in Plaintiff's complaint.  Nor is the additional evidence comprehensive; it only tells part of the story.[9]

---

[5] *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999).

[6] *Id.*

[7] The additional evidence also includes WPD policies and procedures.  But the § 1983 claims do not turn on whether or not policies were followed. *See, e.g.*, *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (noting that violation of an applicable policy does not necessarily give rise to a constitutional violation).  Nor does the survival of Plaintiff's state law claims turn on WPD's policies.  Therefore, their inclusion in the facts, and the dispute over additional evidence relating to them, is unnecessary here.

[8] In their motion to dismiss, Defendants advance arguments grounded in the statute of limitations, standing, causation, and whether certain state law claims are recognized under Kansas law.  These arguments are not impacted by Defendants' additional evidence.

[9] The audio evidence provides insight about the officers' communications leading up to the shooting, but they do not capture all of the discussion and reasoning employed by the officers.  Similarly, the video begins just shortly before the officers entered Stacy's home, and again, provide little insight about the events leading up to the use of lethal force.

Although Plaintiff objects to the Court's consideration of materials outside of her complaint, the Court finds that she did refer to and rely on these exhibits. And although Plaintiff disputes their authenticity, she does not attack the substantive validity of the materials and the Court has no reason to doubt that they are what Defendants say they are.[10] Nonetheless, the facts are still viewed in the light most favorable to Plaintiff. At this stage, the Court's job is not to resolve "a contest between the parties about the facts or the substantive merits of the plaintiff's case."[11] Rather, the Court is tasked simply with determining whether Plaintiff has provided "enough facts to state a claim to relief that is plausible on its face."[12] Under this liberal standard, and for the reasons stated below, Plaintiff is not prejudiced by the Court's consideration of Defendants' additional evidence. Accordingly, the Court lays out the facts both as alleged by Plaintiff and demonstrated in the materials attached to Defendants' motion. The Court will construe all reasonable inferences from the facts in Plaintiff's favor.[13]

## B.  Shooting of Stacy Richard

On February 25, 2014, Plaintiff Michlle Richard and her husband Stacy were at their home. Stacy Richard was armed and suicidal. Michlle called Stacy's therapist, Ana Ahrens, to express her concern. Although she was worried about Stacy, Michlle told Ahrens that Stacy was only a danger to himself. Ahrens then called 911. The 911 dispatcher asked Ahrens to tell

---

[10] Some courts have held that in this context, a plaintiff must do more than simply dispute the authenticity of materials. Instead, the Plaintiff must challenge their substantive validity. *See Tyson Foods, Inc. v. Routh Enters., Inc.*, 2015 WL 457945, *1-2 (E.D. Okla. Feb. 3, 2015); *Prissert v. EMCORE Corp.*, 289 F.R.D. 342, 344-45 (D.N.M. 2012). The Court finds this rationale persuasive and instructive in this case.

[11] 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, 354 (3d ed. 2004).

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[13] *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).

Michlle to move to the doorway so that she could leave the premises if necessary.  Sometime later, Michlle safely left the residence, leaving Stacy in the home alone.

911 dispatched WPD officers to the Richards' home.  Defendant Officers Bruce Mackey, Matthew Phillips, William Stevens, Brian Arterburn, and Defendant Sergeant Michael O'Brien were among those officers dispatched.  The officers were informed that Stacy had declared he would shoot himself if the police showed up.  Although dispatch reported that shots had been fired, Sergeant O'Brien and Officer Mackey reported that they had not heard any shots.  Sergeant O'Brien questioned a distraught Michlle, who again informed the officers that nobody else was inside of the home.  She was then placed in the backseat of a locked police vehicle.  Officers tried to contact Stacy over the phone, but he never answered.

Within five minutes of arriving on scene, the officers entered the home.  They quickly went through the residence until they encountered Stacy on the couch with a gun in his hand.  Officers began directing commands to Stacy, but he either did not respond, or did so very quietly.  In a matter of moments, Stacy raised his arm towards the officers.  Although the video is not entirely clear, it appears that he may have pointed his gun towards at the officers.  They then opened fire.  Officers Mackey, Arterburn, Stevens, and Phillips fired over 40 rounds at Stacy.  Stacy was struck 16 times in the head, chest, abdomen, penis, scrotum, right buttock, and both legs.  Stacy did not fire a shot.  He was then rushed to the hospital and treated for gunshot wounds.  Stacy survived the shooting and incurred more than $400,000 in medical bills as a result of the shooting.  After six months, he was able to return to work.  But he suffered constant pain, and was rendered impotent from the gunshot wounds to his penis and scrotum.  Once again, Stacy sunk into deep depression.  And in October 2014, Stacy hanged himself in his garage.

Stacy's widow, Plaintiff, provided notice of her claims to the City on February 19, 2015. The City denied the claims 158 days later on July 27.[14]  She did not provide notice to the individual officers.  On September 16, she commenced this action as Stacy's heir-at-law and as the special administrator of his estate.  She brings eight claims against the City, the WPD, and the individual officers involved in the events surrounding the shooting of her husband.  Count 1 alleges excessive force in violation of the 4th Amendment.  Count 2 alleges failure to train. Count 3 alleges wrongful death.  Count 4 alleges negligence.  Count 5 alleges negligent infliction of emotional distress.  Count 6 alleges a pattern or practice of excessive force.  Count 7 alleges battery.  And in Count 8 she seeks to recover the costs of medical care that Stacy incurred.  For various reasons, Defendants argue that Plaintiff fails to state claims upon which relief may be granted.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.  Upon such a motion, the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[15]  A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[16]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with

---

[14] Plaintiff's motion states that the City denied the claims on July 18, but her complaint says July 27.  The Court will accept the July 27 date as true. *Hayes v. Whitman* 264 F.3d 1017, 1025 (10th Cir. 2001) ("[A] court may not consider allegations or theories that are inconsistent with those pleaded in the complaint.").

[15] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[16] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

fair notice of the nature of claims as well as the grounds on which each claim rests.[17]  The Court must accept all of the factual allegations in the complaint as true.[18]  But the Court need not afford such a presumption to legal conclusions.[19]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."[20]

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.  The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[21]  So to survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[22] As with a 12(b)(6) motion, all reasonable inferences from the pleadings are granted in favor of the non-moving party.[23]  Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[24]

---

[17] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[18] *Iqbal*, 556 U.S. at 678-79.

[19] *Id.*

[20] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

[21] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); *KMMentor, LLC v. Knowledge Mgmt. Prof'l Soc., Inc.*, 712 F. Supp. 2d 1222, 1231 (D. Kan. 2010).

[22] *Twombly*, 550 U.S. at 555.

[23] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).

[24] *Id*. (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

### III.      Analysis

**A.  Count 1: Excessive Use of Force**

Plaintiff sues under 42 U.S.C. § 1983, alleging that Defendants violated Stacy's Fourth Amendment right to be free from excessive force.   Defendants move to dismiss this claim, arguing that (1) Plaintiff cannot bring a § 1983 action on Stacy's behalf; (2) the force used against Stacy was reasonable; and (3) qualified immunity shields the individual officers from liability.

*1.   Whether Plaintiff can maintain a cause of action on behalf of Stacy.*

The Court will start with the threshold issue of whether Plaintiff can bring a § 1983 action on behalf of her husband. Defendants contend that Fourth Amendment rights cannot be vicariously asserted.[25]  A § 1983 claim must be based on the violation of the plaintiff's personal rights and not those of someone else.[26]   However, the Tenth Circuit has held that the proper remedy for a § 1983 death case is a survival action brought by the estate of the deceased victim.[27]  Plaintiff's complaint does not clarify whether her § 1983 cause of action is a wrongful death claim or a survival claim.  But the purpose of a 12(b)(6) motion is not to "correct inartistic pleadings."[28]  Plaintiff alleges that she is the special administrator of Stacy's estate and she has

---

[25] *See Alderman v. United States*, 394 U.S. 165, 174 (1969).

[26] *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citing *Dohais v. Tooley*, 670 F.2d 934, 936 (10th Cir. 1982)).

[27] *Berry v. City of Muskogee*, 900 F.2d 1489, 1506-07 (10th Cir. 1990).

[28] 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, 369 (3d ed. 2004).

alleged a violation of Stacy's constitutional rights.  In that capacity, she may maintain a survival action under § 1983.[29]

## 2. *Excessive Force*

Defendants argue that Plaintiff fails to state a claim for excessive force because the officers acted reasonably in using deadly force.  "Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment."[30]  The Court assesses the reasonableness of the officers' conduct "from the perspective of a reasonable officer on the scene."[31]  The inquiry is an objective one that allows "for the fact that police officers are often forced to make split-second judgments" in tense and uncertain moments about how much force is necessary.[32]  Use of deadly force is justified if a reasonable police officer would have had probable cause to believe that there was a threat of serious physical violence to himself or others.[33]  In other words, "an officer's use of deadly force in self-defense is not unreasonable under the Fourth Amendment."[34]  Accordingly, Defendants argue that the officers were justified in shooting Stacy because they reasonably believed he was pointing a firearm at them.

---

[29] *Wilson v. City of Lafayette*, 510 F. App'x 775, 783 (10th Cir. 2013) (Briscoe, C.J., concurring) ("Although we do allow for the recovery of some traditional wrongful death damages in an action under 42 U.S.C. §1983, we do so only through the § 1983 cause of action brought by the decedent's estate); *A.B. ex rel Ybarra v. City of Woodland Park*, 2016 WL 1222859, at *4 (D. Colo. Mar. 29, 2016) ("Defendants argue the [§ 1983] survival action may only be brought by the personal representative of the decedent's estate. . . . the Court agrees.").

[30] *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

[31] *Graham*, 490 U.S. at 396.

[32] *Id.* at 396-97.

[33] *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995).

[34] *Hastings v. Barnes*, 252 F. App'x 197, 202 (10th Cir. 2007) (citing *Romero v. Bd. of Cty. Comm'rs of Cty. of Lake, Colo.*, 60 F.3d 702, 704 (10th Cir. 1995)).

But the Court must look at more than the instant that the shots were fired.  The inquiry of reasonableness turns on the totality of the circumstances.[35]  Plaintiff's claim of excessive force relates in part to the officers' conduct leading up to the shooting.[36]  The Court must consider whether the officers' own reckless or deliberate conduct unreasonably created a need to use lethal force.[37]  On this point, Defendants argue that the entry into the house was justified.  Unless an exception to the Fourth Amendment's warrant requirement applies, officers' entry into a home is presumptively unreasonable.[38]  Defendants argue that they were entitled to enter the home under the emergency aid exception.  Under the emergency aid exception, "law enforcement officers 'may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.' "[39]  The test for whether such an entry is reasonable is two-fold.  The Court must ask whether (1) the officers had an objectively reasonable basis to believe there was an immediate need to protect the lives or safety of themselves or others; and (2) the manner and scope of the search was reasonable.[40]

Under the first prong, Defendants argue that the officers had an objectively reasonable basis to believe entry was necessary because: (1) they had been told Stacy was armed and suicidal; (2) they were advised that shots had been fired inside the residence; and (3) attempts to make contact with Stacy had been unsuccessful.  Accordingly, they argue that the officers

---

[35] *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009).

[36] Additionally, Defendants' reasonableness argument only addresses whether the officers were justified in using lethal force at the time Stacy allegedly raised a weapon.  It is another question entirely whether the firing of 40 shots was a reasonable response to the threat.

[37] *Sevier*, 60 F.3d at 699.

[38] *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006).

[39] *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006)).

[40] *Najar*, 451 F.3d at 718.

needed to ascertain whether Stacy was injured or whether medical assistance was necessary. Presumably, they were worried that he had shot himself.[41]   However, this narrative is unsupported by the facts both as alleged by Plaintiff and shown in Defendants' attached exhibits. True, the officers were advised that shots were fired.  But some officers reported that they had not actually heard shots.  And neither the video of the entry nor the audio of the dispatch demonstrate that the officers were primarily concerned that Stacy had already shot himself when they entered the home.  Indeed, there is no evidence that EMS was called when it was reported that shots had been fired.  The officers only called EMS after they shot Stacy.  Accepting Plaintiff's allegations as true, and granting reasonable inferences from all of the facts in her favor, the Court cannot find that the officers entered the house with the reasonable belief that they needed to render emergency assistance to an injured occupant.

Rejecting Defendants' exigency argument, the Court must look at the totality of the circumstances and determine whether Plaintiff plausibly alleged that the officers recklessly and deliberately created the need to use deadly force.  Such a finding is more likely when the police are dealing with someone who is not suspected of a crime and is not a threat to anyone other than himself.[42]   Both parties cite several Tenth Circuit cases dealing with this issue, but the following three cases are most applicable.

In *Allen v. Muskogee, Oklahoma*,[43] officers responded to a report that the decedent was armed and had threatened his family members.[44]   Later, it was reported that he was threatening

---

[41] In other words, the Defendants argue that the officers' conduct was objectively reasonable where they abruptly entered the house to protect Stacy because they were worried that Stacy had shot or would shoot himself, whereupon instead the officers promptly themselves shot at Stacy 40 times.

[42] *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

[43] 119 F.3d 837 (10th Cir. 1997).

suicide.[45]   The officers approached the decedent in his automobile and saw that he was armed.[46]
The officers ordered that the decedent drop the gun and attempted to reach into the vehicle and
seize the gun.[47]   As the officers attempted to seize the gun, the decedent pointed it at them and
was shot and killed.[48]   The Tenth Circuit held that summary judgment in favor of the officers
was inappropriate.[49]   The Court noted that the officers' conduct of approaching the decedent's
vehicle and screaming orders could be found to be unreasonable.[50]

In *Hastings v. Barnes*,[51]   the decedent called 911 to report that he was expressing
thoughts of suicide.[52]   Officers entered the decedent's home and encountered him holding a
sword.[53]   He was holding the sword in a defensive posture, and at times, looked like he was
going to use it on himself.[54]   An officer attempted to get the decedent to drop the sword by
employing pepper spray, but this caused the decedent to charge the officers.[55]   He was then shot
and killed.[56]   The Tenth Circuit held that given these facts, the question of whether the officers

---

[44] *Id.* at 839.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 840.

[50] *Id.* at 841.

[51] 252 F. App'x 197 (10th Cir. 1997).

[52] *Id.* at 198.

[53] *Id.* at 199.

[54] *Id.* at 200.

[55] *Id.*

[56] *Id.*

unreasonably created the need to use deadly force was one for a jury.[57]  The Court noted that, in

the light most favorable to the victim, a constitutional violation had occurred because

> [the decedent] was not a criminal suspect. He was a potentially mentally
> ill/emotionally disturbed individual who was contemplating suicide and had
> called for help. Rather than attempt to help [the decedent], [the officers] crowded
> themselves in [the decedent's] doorway (leaving no room for retreat), issued loud
> and forceful commands at him and pepper-sprayed him, causing him to become
> even more distressed.[58]

Accordingly, the Court found that a reasonable jury could have found that the actions

unreasonably escalated the situation.[59]

In *Estate of Bleck v. City of Alamosa*,[60] officers responded to a report of a Vietnam War

veteran who was intoxicated, armed, suicidal, and alone in his hotel room.[61]  To prevent an

attempted suicide, the officers entered the hotel room with guns drawn and ordered the veteran to

show his hand.[62]  The veteran did not comply, and officers physically tried to subdue him.[63]  In

the ensuing scuffle, the veteran was accidentally shot in the hip.[64]  The Tenth Circuit affirmed

the district court's grant of summary judgment in the officers' favor.[65]  The Court held that even

though the veteran was not suspected of committing a crime or a threat to others, it was

---

[57] *Id.* at 203.

[58] *Id.*

[59] *Id.*

[60] 643 F. App'x 754 (10th Cir. 2016).

[61] *Id.* at 755.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* at 756.

reasonable for the officers to enter the room, at their great personal risk, in order to protect the veteran from harming himself.[66]

The Court takes these three cases with similar facts to show that the question of reasonableness is a very fact-specific inquiry. As alleged, the instant case is a close one. And usually in close cases such as this, reasonableness is properly a question for a jury.[67] In *Allen*, *Hastings*, and *Bleck*, the Tenth Circuit determined whether summary judgment was appropriate. But here, Defendants are not arguing that this close case should be decided in their favor on summary judgment. Rather, they are arguing that Plaintiff fails to state a plausible claim upon which relief can be granted. Accordingly, their motion must be denied. Stacy was emotionally disturbed and considering suicide. His wife had called for help. He was alone in the house. Officers entered his home and issued forceful commands. It is plausible that these commands caused Stacy to become more distressed. Stacy was not suspected of committing a crime, and he did not pose any immediate danger to others when he was alone in his house.

Given these facts, Plaintiff has stated a plausible claim for relief. The Court recognizes that Defendants may have colorable arguments as to why their actions were reasonable, but these arguments do not belong in a 12(b)(6) motion. They are better suited for a motion for summary judgment or a jury determination.

### 3. Qualified Immunity

Defendants also argue that qualified immunity shields the individual officers from liability under § 1983. "Although summary judgment provides the typical vehicle for asserting a

---

[66] *Id.*

[67] *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013) (citing *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009)).

qualified immunity defense, [the Court] will also review this defense on a motion to dismiss."[68] But by asserting a qualified immunity defense in a 12(b)(6) motion, Defendants subject themselves to a more challenging standard of review.[69]  To overcome Defendants' claim of qualified immunity, Plaintiff must plausibly allege that (1) Defendants deprived Stacy of a constitutional right; and (2) the right was clearly established at the time.[70]  As noted above, Plaintiff has stated a plausible claim that Defendants violated Stacy's Fourth Amendment right to be free from excessive force.  So the only determination left for the Court is whether that right was clearly established.

"A right is 'clearly established' if Supreme Court or Tenth Circuit case law exists on point or if the 'clearly established weight of authority from other circuits' found a constitutional violation from similar actions."[71]  The inquiry is not whether the general right to be free from excessive force is clearly established; rather, the inquiry is whether the right was clearly established under the particular facts of the case.[72]  The Court must not be too general.  Instead, it must determine "whether the violative nature of particular conduct is clearly established."[73]

Here, the particular conduct alleged by Plaintiff is that Defendants recklessly or deliberately created an unnecessary need for lethal force.  Numerous Tenth Circuit cases have

---

[68] *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

[69] *Choate v. Lemmings*, 294 F. App'x 386, 391 (10th Cir. 2008) (citing *Peterson*, 371 F.3d at 1201)).

[70] *Peterson*, 371 F.3d at 1202.

[71] *Id.* (quoting *Murrel v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)).

[72] *Long v, Fulmer*, 545 F. App'x 757, 760 (10th Cir. 2015).

[73] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

held that such conduct can constitute a violation of the Fourth Amendment.[74]   Accordingly, Plaintiff has alleged that the officers violated a clearly established constitutional right. Defendants' motion to dismiss on qualified immunity grounds is denied.

### B. Count 2: Failure to Train

The well-established elements of a failure to train claim under § 1983 require Plaintiff to show that:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.[75]

Defendants' only argument on this claim is that Plaintiff fails to allege the first element: that the officers committed a constitutional violation.  For the reasons stated above, the Court rejects this argument and notes again that Plaintiff has stated a plausible claim that Stacy's Fourth Amendment rights were violated.  Although Defendants do not address the other elements, the Court finds that Plaintiff also plausibly alleges that (2) officers frequently must deal with the mentally ill, (3) the shooting of 10 mentally ill people by WPD officers since 2010 arguably illustrates deliberate indifference to those persons, and (4) the failure of officers to request a crisis intervention team before entering the house is a direct result of inadequate training. Accordingly, Plaintiff makes a plausible claim against the city for failure to train under § 1983.

---

[74] *See Thomson*, 584 F.3d at 1320; *Hastings*, 252 F. App'x at 202; *Jiron*, 392 F.3d at 418; *Medina*, 252 F.3d at 1131; *Allen*, 119 F.3d at 840; *Sevier*, 60 F.3d at 699.

[75] *Allen*, 119 F.3d at 841-42.

### C. Counts 3 and 4: Wrongful Death and Negligence

In Counts 3 and 4, Plaintiff brings negligence claims under state law.  In Count 3, Plaintiff—as Stacy's heir—seeks to recover damages that she suffered for wrongful death caused by Defendants' negligence.  In Count 4, Plaintiff—as Stacy's administrator—seeks to recover for Stacy's injuries prior to death.[76]  Both claims turn on the allegation that the injuries were caused by Defendants' negligence.  Defendants rely on *Baska v. Scherzer*[77] to argue that Plaintiff's negligence claims are actually battery claims in disguise, which they argue are barred by the applicable statute of limitations.[78]  *Baska* dictates that the Court must look at the substance of a claim and not the manner in which it was pleaded.[79]  Under this standard, Defendants contend that Counts 3 and 4 actually allege conduct that would be considered battery and not negligence. This Court has considered this same argument before.[80]  Although the law is somewhat unclear, this district has held that Kansas does recognize a cause of action for negligent use of force.[81]  So

---

[76] *Marler v. Hiebert*, 960 F. Supp. 253, 254 (D. Kan. 1997) ("Under Kansas law at least two causes of action can arise when a person is killed due to the alleged negligence of another.  Under K.S.A. § 60-1801, the administrator of the decedent's estate may bring a cause of action for the decedent's injuries prior to death ('survival action').  Conversely, under § 60-1902, an heir of the decedent may bring a wrongful death action for the loss suffered by all heirs after death.").

[77] 283 Kan. 750, 156 P.3d 617 (2007).

[78] Defendants assert that this argument also applies to Plaintiff's claim for negligent infliction of emotional distress.  But Defendants do not advance this argument, and the Court cannot see how Defendants' *Baska* argument would apply to that claim.  The argument that a negligence claim is actually a battery claim in disguise can hardly apply to Plaintiff's negligent infliction of emotional distress claim, in which Plaintiff, and not her husband, is the injured party.  That claim looks nothing like a battery claim, and therefore, the Court will not consider that argument here.

[79] *Baska*, 283 Kan. at 755, 156 P.3d at 622.

[80] *See Patterson v. City of Wichita*, 2014 WL 2533180 (D. Kan. June 5, 2014); *Price v. City of Wichita*, 2013 WL 6081103 (D. Kan. Nov. 19, 2013).

[81] *Patterson*, 2014 WL 2533180, at *8; *Price*, 2013 WL 6081103, at *4; *Clark v. Thomas*, 505 F. Supp. 2d 884, 890 (D. Kan. 2007).

the question is whether Plaintiff's negligence claims substantively allege conduct that constitutes battery or the negligent use of force.

Liability for negligence in this context arises "upon the breach of a special duty owed by an officer."[82]   A "special duty" arises "where there is an affirmative act by the officer causing injury."[83]   A breach of that duty occurs when officers' use of force is not reasonable and necessary in a given situation.[84]   In her Complaint, Plaintiff alleges that Defendants owed Stacy a duty not to harm him and breached that duty "by negligently failing to follow standard police practices and procedure by entering the residence unnecessarily and creating the scenario in which they felt the need to use lethal force."   The entry into the house was an affirmative act, and thus, the officers owed Stacy a special duty.[85]   And as noted above, she plausibly alleges that the officers' conduct was unreasonable and unnecessary under the circumstances.

In Counts 3 and 4, Plaintiff alleges that (1) officers owed Stacy a special duty; (2) that they breached that duty by using force that was unreasonable and unnecessary; and (3) that Stacy was injured as a result.   Under Kansas law, Plaintiff has stated a plausible claim for negligent use of force, and the Court will not construe them as battery claims.[86]

Because Plaintiff has alleged negligent use of force under Kansas law, Defendants' also cannot raise a defense under the Kansas Tort Claims Act ("KTCA").   The KTCA grants

---

[82] *Clark*, 505 F. Supp. 2d at 890 (citing *Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1033, 667 P.2d 380, 385 (1983)).

[83] *Dauffenbach*, 233 Kan. at 1033, 667 P.2d at 385.

[84] *Id.* at 891.

[85] For this reason, the Court also rejects Defendants' alternative argument that the police did not owe Stacy a duty.  Plaintiff alleges that the officers owed a special duty under *Dauffenbach*.

[86] *See Price*, 2013 WL 6081103, at *4.

immunity from tort claims to governmental entities and their employees if the claims are "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the party of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."[87]  This is known as the discretionary function exception, and Defendants argue that it applies here to bar the state law tort claims against them. But under Kansas law, an allegation of negligent use of force does not fall within the KCTA's exceptions.[88]

Lastly, Defendants argue that Plaintiff's wrongful death claim should be dismissed because the officers' actions were not the proximate cause of Stacy's death.  Proximate cause is a prerequisite for liability due to negligence under Kansas law.[89]  Proximate cause is the "cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act."[90]  There are two types of proximate cause: causation in fact and legal causation.[91]  To show causation in fact, Plaintiff must prove a cause-and-effect relationship between the officers' conduct and Stacy's death.[92]  She must show that but for the

---

[87] K.S.A. § 75-6104(e).

[88] *Caplinger v. Carter*, 9 Kan. App. 2d 287, 295, 676 P.2d 1300, 1307 (1984) ("We do not believe any of the exceptions contained in the Kansas Tort Claims Act were intended to permit police officers to violate the prohibition in *Dauffenbach* that they shall not use unreasonable force."); *see also Clark*, 505 F. Supp. 2d at 894 ("[Kansas Tort Claim] immunity would not protect defendants from liability for the use of an unreasonable amount of force.");

[89] *Cooper v. Eberly*, 211 Kan. 657, 663, 508 P.2d 943, 949 (1973).

[90] *Greenwood v. Gardner*, 189 Kan. 68, 71, 366 P.2d 780, 782 (1961).

[91] *Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 290 Kan. 406, 420, 228 P.3d 1048, 1060 (2010).

[92] *Id.*

officers' actions, Stacy would not have died.[93]   The Complaint shows that Stacy was suicidal before he was shot, and did not commit suicide until several months after he was shot.  Given these facts, Defendants argue that causation-in-fact is lacking because the complaint does not show that but for his injuries, Stacy would not have killed himself.

Normally, courts are reluctant to recognize suicide as a proximate consequence of a defendant's wrongful act.[94]   But there is an exception to this general rule "when the conduct of the tortfeasor causes a mental condition which results in an uncontrollable impulse leading to suicide."[95]   Plaintiff alleges that Stacy suffered unbearable and constant physical and mental pain as a result of his gunshot wounds.  He was shot in the genitals and rendered impotent.  She contends that his inability to be intimate with his wife took a great toll on his mental health, marriage, and self-image.  She claims that these factors caused Stacy to take his life.  These allegations are sufficient to survive a motion to dismiss.[96]   Accepting all allegations as true, and drawing all inferences in Plaintiff's favor, it is certainly plausible that Stacy's suicide was the proximate consequence of the 16 gunshot wounds he suffered.

Defendants' motions to dismiss counts 3 and 4 are denied because Plaintiff has stated plausible claims for negligence and wrongful death under Kansas law, Defendants are not shielded from immunity under the Kansas Tort Claims Act, and Plaintiff has plausibly alleged that Stacy's suicide was caused by Defendants' actions.

---

[93] *Id.*

[94] *See Burdett v. Harrah's Kan. Casino Corp.*, 294 F. Supp. 2d 1215, 1234 (D. Kan. 2003).

[95] *Id.* at 1235.

[96] Once again, Defendants' arguments are improper for a 12(b)(6) motion. *See Hale v. Brown*, 287 Kan. 320, 324, 197 P.3d 438, 441 (2008) ("[P]roximate cause is ordinarily a question of fact that is resolved for a trier of fact.").

### D.  Count 5: Negligent Infliction of Emotional Distress

Defendants move to dismiss Plaintiff's claim for negligent infliction of emotional distress because she has not demonstrated that she suffered a physical injury.  "To succeed on a claim for negligent infliction of emotional distress, a plaintiff must first establish that he or she has a qualifying physical injury under Kansas law."[97]  Plaintiff alleges that she experienced weight gain, insomnia, depression, hair loss, hives, and panic attacks as a result of her husband's injury and later death.  Kansas courts have held that insomnia, weight gain, depression, and allegations of that sort do not qualify as a physical injury in this context.[98]  Additionally, courts in this district have held that depression, hives, and other similar allegations are insufficient to state a cause of action under Kansas law.[99]

Plaintiff's allegations are similar to those in the cases cited above.  Her alleged symptoms, while lamentable, fail to rise to the level of a physical injury.  Without actual physical injury, Plaintiff fails to state a claim for negligent infliction of emotional distress.  Accordingly, Defendants' motion to dismiss count 5 is granted.

### E.  Count 6: Pattern or Practice of Excessive Force

---

[97] *Ware ex rel. Ware v. ANW Special Educ. Coop. No. 603,* 39 Kan. App. 2d 397, 401, 180 P.3d 610, 613 (2008) (citing *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667, 669 (1988)).

[98] *See, e.g., Anderson*, 242 Kan. at 860, 752 P.2d at 669 ("Generalized physical symptoms of emotional distress such as headaches or insomnia are insufficient to state a cause of action."); *Hopkins v. State*, 237 Kan. 601, 612-13, 702 P.2d 311, 319-20 (1985) (holding that "insomnia, headaches, weight gain and general physical upset" are insufficient to state a cause of action); *Ware*, 39 Kan. App. 2d at 402, 180 P.3d at 614 ("[N]ightmares, anxiety, nervousness, trembling, weight gain, and sleep difficulties do not qualify as physical injuries.").

[99] *Gilliam v. USD No. 244 Sch. Dist.*, 397 F. Supp. 2d 1282, 1292 (D. Kan. 2005) (finding that allegations of "nausea, insomnia, nightmares, vomiting, difficulty eating, crying, fatigue, pain, stomach pain, diarrhea, muscle pain, depression, and suicidal thoughts" failed to state a claim upon which relief could be granted for negligent infliction of emotional distress.); *Fiscus v. Triumph Grp. Ops., Inc.*, 24 F. Supp. 2d 1229, 1245 (D. Kan. 1998) (holding that allegations of migraines and hives were insufficient to state a cause of action.).

Defendants also move to dismiss Count 6, in which Plaintiffs alleges that the City, through the WPD, conducted a pattern and practice of concealing misconduct including, but not limited to, police shootings. A city can held liable under § 1983 if the alleged constitutional violation is the result of the city's custom or policy.[100] Thus, a city can only be held liable for an act that "it officially sanctioned or for the actions of an official with final policymaking authority."[101] "An official policy can be shown through an official decision or statement or through 'the existence of widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with force of law.' "[102]

Plaintiff's theory is that the City's "pattern and practice of concealing misconduct" failed to deter officers from using excessive force. She alleges that the City's failure to or unwillingness "to properly, objectively and timely investigate officer involved shootings" contributed to a pattern and practice of excessive force. And so she does not allege an official policy. Rather, she contends that the City had a custom of failing to investigate or act on complaints of excessive force.[103] To make such a showing, Plaintiff must prove (1) a continuing, widespread, and persistent pattern of misconduct; (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff.[104]

---

[100] *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[101] *Goss v. Bd. of Cty. Comm'rs*, 645 F. App'x 785, 789 (10th Cir. 2016).

[102] *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

[103] *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir. 2008).

[104] *Id.* (citing *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty, Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

Plaintiff makes the following allegations in support of her pattern and practice claim. The City conceals the identity of officers involved in shootings. Those officers are allowed to meet privately with union representatives and a critical stress incident team and are "coached" on what to say about the shooting. The City investigates the shootings and is not subject to any civilian oversight. Police shootings are presumed to be justifiable homicides before any findings are made. Even though the Kansas Bureau of Investigation ("KBI") oversees the City, the internal investigations ignore facts and leads. Investigators fail to meaningfully investigate shootings, and as a result, the City has never found that an officer involved shooting was excessive or violated policy.

These allegation do not rise to the level of a pattern and practice of excessive force under § 1983. The Court will assume, without deciding, that Plaintiff has alleged a continuing, widespread, and persistent pattern of misconduct.[105] Even so, Plaintiff fails to allege deliberate indifference or tacit authorization of excessive force. At best, she alleges that the City fostered an environment in which excessive force cases were not vigorously prosecuted. But lax treatment is not the same is tacit authorization. The City's written policy—which Plaintiff relies on elsewhere in her complaint—and the fact that investigations always occurred both suggest

---

[105] This claim is dubious, however. Some of the alleged "misconduct" relates to accused officers' contact with union representatives and counsel. The Court is loath to find misconduct in counsel for an accused person, whether or not that person is a police officer. While some of Plaintiff's allegations certain constitute misconduct, many of these are conclusory in nature. At its core, the alleged misconduct is not the failure to investigate excessive force claims; rather, it is the failure of these investigations to result in convictions. The Court is unwilling to assume that every past allegation of excessive force was improperly investigated and the officers were wrongly absolved of wrongdoing.

that excessive force was prohibited.  Investigations, even if done improperly, do not suggest tacit authorization of otherwise prohibited conduct.[106]

Plaintiff also fails to plausibly allege that the City's custom caused Stacy's injuries. Plaintiff must show that the City's "custom was the moving force behind the constitutional deprivation."[107]  The City's custom "must have actually caused" the constitutional violation.[108] Plaintiff fails to establish a nexus between the City's alleged custom and the shooting of Stacy Richard.  It is simply not plausible to assume that the City's alleged custom of attempting to sidestep the KBI with improper, internal investigations was a direct cause of the officers' entry into the Richards' home.  Even if the City had a custom of not earnestly investigating excessive force cases, there is no reason to believe that such a custom directly caused the shooting of Stacy Richard.

Because Plaintiff fails to allege that the City had a custom of encouraging excessive force that could have caused Stacy's injuries, the Court dismisses Count 6 of Plaintiff's complaint.

### F.  Count 7: Battery

The individual officers move to dismiss Plaintiff's claim for battery, arguing that is barred by the statute of limitations.  K.S.A. § 60-514(B) provides that an action for battery must be brought within one year.  Stacy was shot on February 24, 2014, but this case was not filed until September 16, 2015.  Accordingly, Defendants argue that Plaintiff's battery action is barred.  Plaintiff argues that the statute of limitations does not bar her claim against the

---

[106] *See Rost*, 511 F.3d at 1125 (noting that failure to effectively address an issue "only raises an issue of the district's negligence, not its deliberate indifference.").

[107] *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009).

[108] *Id.*

individual officers for two reasons.  First, she argues that the Court should retroactively apply the current version of K.S.A. § 12-105b(d), which would have tolled the statute of limitations in this case.  Second, she contends that the statute of limitations was tolled under K.S.A. § 60-517 because WPD and the City concealed the identity of the individual police officers involved in the shooting.

### 1.  Retroactive Application of K.S.A. § 12-105b(d)

It is undisputed that Plaintiff's battery claim against the City is timely because the statute of limitations was tolled under K.S.A. § 12-105b(d).[109]  But the individual officers argue that § 12-105b(d) does not apply to them.  In 2014, the Kansas Supreme Court decided in *Whaley v. Sharp*[110] that § 12-105b(d)'s notice provision applied only to municipalities and not to individual municipal employees.[111]  Under *Whaley*, the statute of limitations for Plaintiff's battery claim would only have been tolled for her action against the City.  But on July 1, 2015, § 12-105b(d) was amended so that individual municipal employees were also included in the statute's notice requirement.  Under the current version of the statute, a claimant's notice to the city tolls the statute of limitation for claims against both the city and the individual employees.  Plaintiff argues that the amendment to § 12-105b(d) applies retroactively, and thus, the statute of limitations was tolled for her claims against the individual officers.

---

[109] *See, e.g., Cummings v City of Lakin*¸ 31 Kan. App. 2d 532, 533, 67 P.3d 166, 167 ("K.S.A. 12-105b(d) allows a claimant to extend the statute of limitations if the denial [of the claim] by the city is made after the statute of limitations bars the action.").

[110] 301 Kan. 192, 343 P.3d 63 (2014).

[111] *Id.* at 201, 343 P.3d at 69.

"In general, 'a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively.' "[112]  But there is an exception to this rule when "the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties."[113]  An amendment is procedural if it affects the machinery or method for carrying out a suit.[114] And a change in the law is remedial if it simply reforms or extends existing rights.[115]  On the other hand, a law is substantive if it establishes a right or creates liability against a defendant.[116]

Section 12-105b(d) addresses procedure for the presentment of claims under the KTCA. It does not establish any new rights.  It does not assign a new form of liability.  It does not create a new cause of action.  The statute simply lays out the procedural steps that a claimant must go through in order to bring a claim under the KTCA.  More specifically, it prescribes how a claimant should provide notice to a municipality.  And Kansas courts consider notice statutes procedural.[117]

However, even though § 12-105b(d) is procedural, the Court will not apply it retroactively if it affects the vested right of a party.[118]  A defendant has a vested right in a statute

---

[112] *Norris v. Kan. Emp't Sec. Bd. of Review*, 303 Kan. 834, 841, 367 P.3d 1252, 1257 (2016) (quoting *State v. Williams*, 291 Kan. 554, Syl. ¶ 1, 244 P.3d 667 (2010)).

[113] *State v. Hutchinson¸* 228 Kan. 279, 287, 615 P.2d 138, 145 (1980).

[114] *Brennan v. Kan. Ins. Guar. Ass'n*, 293 Kan. 446, 460-61, 264 P.3d 102, 113 (2011).

[115] *Id.* at 461, 264 P.3d at 113

[116] *Id.*

[117] *See Stevenson v. City Council of Topeka*, 245 Kan. 425, 427-28, 781 P.2d 689, 692 (1989);  *Kopp's Rug Co. v Talbot*, 5 Kan. App. 2d 565, 570, 620 P.2d 1167, 1172 (1980).

[118] *Stevenson*, 245 Kan at 428, 781 P.2d at 692.

of limitations defense.[119]   "[O]nce a plaintiff's claim is barred by the statute of limitations, it cannot be revived" by the retroactive application of a statute.[120]   Therefore, if the claims against the individual officers were time-barred before § 12-105b(d) was amended, then the Court cannot apply the amendment retroactively.   On December 24, 2014, *Whaley* held that § 12-105b(d) did not apply to individual municipal employees.[121]   The current version of the statute, that includes municipal employees, did not go into effect until July 1, 2015.   So from December 24, 2014, until July 1, 2015, a claimant's notice to a municipality under § 12-105b(d) did not toll the statute of limitations with regards to individual municipal employees.   Therefore, Plaintiff's notice to the City on February 19, 2015, did not toll the statute of limitations with regards to the officers.   And so on February 25, 2015, the statute of limitations for a battery action against the individual officers had expired: the officers had a vested right in the statute of limitations defense.[122]   The Court will not retroactively apply a statute that would modify "a vested right of defense that existed prior to the effective date of the procedural statute extending the statute of limitations."[123]

### 2. Concealed Identity Tolling

Plaintiff also argues that the statute of limitations for her battery action against the officers was tolled because the City concealed the identity of the police officers involved in the shooting.   K.S.A. § 60-517 dictates that a statute of limitations will be tolled if the defendant has

---

[119] *Id.*

[120] *Id.*

[121] *Whaley*, 301 Kan. at 201, 343 P.3d at 69.

[122] *See Jackson v. Am. Best Freight Sys., Inc.*, 238 Kan. 322, 325, 709 P.2d 983, 985 (1985).

[123] *Stevenson*, 245 Kan. at 428, 781 P.2d at 692.

"concealed himself."  Plaintiff contends that the officers' names were not revealed until August of 2015.  Although these assertions were not included in Plaintiff's complaint, a Court may "consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint."[124]  But even accepting these additional allegations as true, Plaintiff fails to allege that the statute of limitations should be tolled under § 60-517.

Section 60-517 states, in relevant part, that the statute of limitations will be tolled when the defendant "has abscond[ed] or conceal[ed] *himself or herself.*"[125]  "The mere inability of a plaintiff to locate a defendant where there has been no attempt *by defendant to conceal himself* is not sufficient to establish concealment within the meaning of the tolling statute."[126]  Plaintiff only alleges that the City concealed the identities of the individual officers.  But the statute only tolls the statute of limitations when a defendant conceals himself.  It does not apply when a defendant's identity is concealed by another party.[127]  Here, there are no allegations that the individual officers did anything to conceal their own identities.  Plaintiff's allegations are directed toward the City, and not the individual officers.  Therefore, § 60-517 does not apply, and the statute of limitations was not tolled.

For the reasons stated above, the Court finds that Plaintiff's state law claims for battery against the individual officers are barred by the one-year statute of limitations.  Therefore, the battery claims against Defendants Phillips, Stevens, Arterburn, and Mackey are dismissed.  The

---

[124] *Hayes*, 264 F.3d at 1025.

[125] K.S.A. § 60-517 (emphasis added).

[126] *Johnson v. Miller*, 8 Kan. App. 2d 288, 290, 655 P.2d 475, 477 (1982) (emphasis added).

[127] *See Hopkins v. Bd. of Wilson Cty.*, 2016 WL 3057431, *3 (D. Kan. May 31, 2016).

Court will also dismiss the battery claim against Defendant O'Brien unless Plaintiff can show cause within 28 days.[128]

### G. Count 8: Medical Costs

In Count 8 of her complaint, Plaintiff seeks to recover the costs of medical care that resulted from the shooting. She claims that she is entitled to the costs under K.S.A. § 22-4612. Section 22-4612(a) provides in relevant part that a city or city law enforcement agency "shall be liable to pay a health care provider for health care services rendered to persons in the custody of such agencies" to the extent that that person is not insured. Defendants argue that Plaintiff does not have standing to seek damages under this statute because she is not a health care provider. Both parties note that there is no case law on point. However, recorded cases filed under § 22-4612 show that the statute has primarily—if not exclusively—been invoked by medical care providers, and not the individuals who received treatment while in custody.[129]

The Court finds that § 22-4612 was not meant to allow non-medical care providers to sue in order to recover medical costs. The statute does not include a provision specifically allowing an individual to sue. Rather, it states that the city or police department "shall be liable to pay a health care provider."[130] The statute establishes an obligation between the government entity and the health care provider—nobody else is included. As the Kansas Court of Appeals has noted, an

---

[128] *Cf. Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009) ("When a district court believes it is likely that a *pro se* prisoner's § 1983 complaint is dismissible on the basis of the state's statute of limitations, the court may issue a show cause order giving the plaintiff an opportunity to explain why the statute of limitations should not be tolled.").

[129] *See Stormont-Vail Healthcare, Inc. v. Bd. of Cty. Comm'rs for Shawnee Cty.*, 2016 WL 2772859, 376 P.3d 93 (Kan. App. May 13, 2016) (unpublished table opinion); *Univ. of Kan. Hosp. Auth. v. Bd. of Cty. Comm'rs of Unified Gov't of Wyandotte Cty.*, 301 Kan. 993, 348 P.3d 602 (2015); *Univ. of Kan. Hosp. Auth. v. Bd. of Comm'rs of Wabaunsee Cty.*, 299 Kan. 942, 327 P.3d 430 (2014); *Univ. of Kan. Hosp. Auth. v. Bd. of Cty. Comm'rs for Brown Cty.*, 2013 WL 3147651 (D. Kan. June 19, 2013).

[130] K.S.A. § 22-4612(a).

individual's obligation to pay his medical bills is unrelated to the statutory duty imposed on the government by § 22-4612.[131]

Accordingly, the Court finds that Plaintiff cannot seek to recover from the city under § 22-4612 because she is not a health care provider.  Count 8 is dismissed.

## IV.    CONCLUSION

Because Plaintiff has stated a plausible claim that Defendants conduct constitutes excessive force, the Court denies Defendants' motion to dismiss Counts 1 and 2.  The Court also denies Defendants' motion to dismiss Counts 3 and 4 because under Kansas law, Plaintiff plausibly alleged that Defendants' use of force was unreasonable and that it was the proximate cause of her husband's death.  The Court grants Defendants' motion to dismiss Count 5 because Plaintiff failed to allege that Defendants' negligence caused her to suffer a qualifying physical injury.  The Court grants Defendants' motion to dismiss Count 6 because Plaintiff failed to allege a custom of encouraging excessive force by the City that could have directly caused Stacy's injuries.  Defendants' motion to dismiss Count 7 against the individual officers is granted because Plaintiff's battery claim against them was barred by the applicable statute of limitations. Plaintiff is ordered to show cause within 28 days why the Court should not also dismiss the battery claim against Defendant O'Brien.  Lastly, the Court grants Defendants' motion to dismiss Count 8 because Plaintiff is not a medical provider, and thus, cannot sue under K.S.A. § 22-46123(a).

---

[131] *Stormont-Vail*, 2016 WL 2772859 at *6 ("[The custodial individual's] obligation to pay Stormont-Vail, grounded in contract or quasi-contract, is legally unconnected to the liability imposed on government entities in [K.S.A. § 22-4612].  That liability is an independent statutory duty and neither places a government entity in the shoes of the individual in custody nor imposes on the government entity the legal obligations of the individual, as the recipient of the services, to pay for those services.").

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 25) is hereby **GRANTED IN PART AND DENIED IN PART.** Defendants' motion to dismiss is **GRANTED** as to Counts 5, 6, 7, 8 of the complaint. In regards to Counts 1, 2, 3, and 4, the motion is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Mackey's Motion for Judgment on the Pleadings (Doc. 30) is hereby **GRANTED IN PART AND DENIED IN PART**. Mackey's motion is **GRANTED** as to Counts 5 and 7. In regards to Counts 1, 3 and 4, the motion is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff show cause within 28 days why the Court should not dismiss Count 7 against Defendant Michael O'Brien.

**IT IS SO ORDERED**.

Dated this 23rd day of September, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT COURT JUDGE